OPINION OF THE COURT
Harold E. Koreman, P. J.
The subject claim is predicated on allegations of medical malpractice relating to an operation performed on claimant while he was an inmate at the Clinton Correctional Facility. Claimant alleges that as a result of negligently performed nasalplasty (cosmetic surgery to remove bone from the nasal area) he contracted an infection of the nasal passages, face and eyelids, and also sustained a permanent deviation of his septum causing him headaches, nosebleeds and difficulty in breathing.
The surgery at issue took place in the infirmary of the Clinton Correctional Facility on February 12, 1980, and was conducted by a Dr. Olukayode Omotunde. The procedure, which involves an incision on the inside of the nasal passage and the chipping off and removal of bone fragments, was performed under a local anesthetic. Subsequent to surgery, packings and a nasal dressing, together with a splint, were applied. The operative report *770 indicated that the patient was discharged from the operating room in satisfactory condition. His progress notes advise that he complained of pain, for which he was medicated, and that there was moderate drainage for several days following the procedure. Claimant was discharged back into the general prison population on February 19, 1980. However, on the following day he presented himself to the infirmary and was admitted due to an infection in the area of the nasal passage and eye. Claimant was treated for the following three days with erythromycin, an antibiotic. On February 22 it was determined that he should be transferred to Champlain Valley Physician’s Hospital, where he was examined by a Dr. Thomas D. Saurwein, who, after noting the infection (periorbital cellulitis), performed a postoperative procedure to drain pus from the periorbital region of the nasal passage. Claimant was treated with antibiotics and a second surgical procedure to drain the infection was performed on February 26. He was returned to the infirmary of the Clinton Correctional Facility on February 28,1980, where he remained until March 2,1980. On May 13,1980, claimant was readmitted to Champlain Valley due to a recurrence of the infection. On this readmission Dr. Saurwein ascertained the presence of a small bone fragment or spicule and, accordingly, he performed an operative procedure to remove the same. Claimant was discharged on May 16 and returned to Clinton Correctional Facility. Subsequent to his return to Clinton claimant received no further medical treatment as he refused to be interviewed or examined by the doctors at the facility.
Claimant, by his proof, attempted to establish that the State’s employee, Dr. Omotunde, was negligent in electing to perform the nasalplasty at a time when claimant was suffering from a possible throat infection; that the operation was negligently performed in that all bone fragments were not removed; and thirdly, that Dr. Omotunde’s failure to use antibiotics represented a deviation from normal medical practice and resulted in the infection and subsequent complications. Additionally, claimant asserted that it was reasonable for him to refuse further treatment by doctors at Clinton Correctional Facility and that he was denied proper medical care by reason of the facility’s refusal to honor his request to be seen by outside physicians. As a result of the alleged malpractice, claimant argued that he has sustained pain and suffering, and permanent injuries in the form of a deviated septum which causes nosebleeds and headaches.
In order to establish a claim for medical malpractice claimant must prove that the medical personnel involved in his treatment *771 did not possess the requisite knowledge and skill ordinarily possessed by practitioners in the field, or neglected to use reasonable care in the application of such skill, or failed to exercise their best judgment (Pike v Honsinger, 155 NY 201; Hirschberg v State of New York, 91 Misc 2d 590). A mere honest error of professional judgment or a difference in opinion as to how a procedure should be performed is not sufficient to form the basis for liability (St. George v State of New York, 283 App Div 245, affd, 308 NY 681). Moreover, in order to sustain his burden of proof, claimant must present expert testimony which establishes the negligence and causation to a reasonable degree of medical certainty (see, Hirsch v Safian, 257 App Div 212).
Claimant presented an expert, one Brij M. Rekhi, M.D., an otolaryngologist, who testified that claimant had a cold at the time of the operation and that he would not have performed the surgery due to the risk of infection. This testimony, standing alone, is not sufficient for a finding of malpractice on the part of Dr. Omotunde. It does not establish that Dr. Omotunde’s decision was medically improper and Dr. Rekhi did not so testify. Rather, it is only an indication that Dr. Rekhi’s judgment would have been different. Continuing, however, the evidence does indicate that Dr. Omotunde failed to use antibiotics on claimant at any time during or after the surgery. According to Dr. Rekhi, this failure was a deviation from accepted medical practice and it was the doctor’s testimony that to a reasonable degree of medical certainty the infection which claimant sustained post-surgery would have been prevented had antibiotics been administered. Based on the foregoing we find that the failure to use antibiotics postsurgery constituted medical malpractice, and we further find that as a result thereof claimant sustained a rather severe infection which caused him pain and suffering.
We next turn to the allegations that the nasalplasty surgery was negligently performed, i.e., that a bone fragment was left in the site by Dr. Omotunde, necessitating a second operation for its removal. We do not find claimant’s proof in this area to be persuasive. While Dr. Rekhi testified that the postoperative report does not indicate that a thorough cleaning of the incision was effected, and that such a cleaning is necessary to insure the removal of all bone fragments, the record does establish that upon claimant’s February 22 admission to Champlain Valley (10 days after the operation) Dr. Saurwein conducted an internal examination of claimant’s nose and did not discover any bone fragments. Rather, Dr. Saurwein was of the opinion that the bone fragment first surfaced in May of 1980. Even Dr. Rekhi admitted that although nasalplasty may be properly and compe *772 tently performed the bone fragments are so small that it is possible that all fragments will not be removed. On the testimony presented we must reject claimant’s contention that Dr. Omotunde negligently failed to remove all bone fragments. Accordingly, the subsequent operation which was required to remove the fragment cannot be said to have been necessitated by reason of the defendant’s negligence. As for claimant’s infection of May 1980, Dr. Saurwein testified that the culture from the May infection revealed a bacteria which differed from the one responsible for the postoperative infection of February. He further stated that he did not believe that the May infection was related to the original operation. It is the court’s finding that Dr. Omotunde’s failure to use antibiotics immediately after the February surgery was not responsible for the infection which appeared in May. Neither is there any evidence to indicate that claimant’s treatment in May was in any way deficient.
Finally, we reject claimant’s allegation that he was not provided proper medical care subsequent to May 1980. Although claimant expressed his concern over seeing Dr. Omotunde, it was established that said doctor was only on a two-month rotation at Clinton and that a different physician would have been available subsequent to April 1980. Claimant’s continued refusal of medical care and his failure to seek any medical treatment upon his release from prison in September 1982 until April 1984 (when he was examined by Dr. Rekhi for purposes of this trial) belies his argument that the State withheld necessary medical care.
Turning to the damages sustained by claimant by reason of Dr. Omotunde’s failure to use antibiotics, it is our opinion that said negligence was causally responsible only for the February 1980 infection. Although claimant maintains that he has sustained permanent injuries consisting of a deviated septum and slightly deviated nose which cause migraines and nosebleeds, Dr. Saurwein testified that in his opinion these symptoms are caused by allergic rhinitis — allergies. Even viewing the opinion of claimant’s expert, Dr. Rekhi, at its best, the doctor was only able to testify that claimant’s ongoing condition is attributable to either the surgery, the postoperative treatments, and/or the infection. He was unable to single out any one cause. The court’s finding of medical malpractice is limited to the failure of defendant’s medical personnel to use antibiotics postsurgery, and liability can only attach for the conditions causally resulting therefrom (see, Hirsch v Safian, 257 App Div 212, supra). Liability does not extend to injuries or permanent conditions which were caused by factors not connected to or associated with *773 defendant’s negligence. Thus, claimant is only entitled to recover damages for the February 1980 infection and the treatment relating thereto, which included his somewhat lengthy treatment with antibiotics (14 days) and his admission to Champlain Valley on February 22, 1980 for a period of six days, during which time two surgical procedures had to be performed to drain the site of the infection. As a result of said operations, claimant has sustained a permanent scar under his left eye, which is three-eighths of an inch in length and which is somewhat noticeable, as well as pain and suffering associated with this course of treatment. Based on the above it is this court’s determination that claimant is entitled to judgment against the State in the sum of $7,500 for all of his injuries, pain and suffering.
At trial the court reserved decision on the admission into evidence of claimant’s exhibits 1 through 10. We now receive said exhibits into evidence. Claimant’s objection to State’s exhibit F is at this time overruled, and said exhibit is also received into evidence. All motions made at trial and not heretofore ruled upon are now denied, and this writing constitutes the entire decision of this court pursuant to CPLR 4213.